## First National Bank of Springfield, Illinois, v. Georgetta E. Gatton.

1. MARRIED WOMAN—*Husband May Act as Wife's Agent.*—A married woman, who is the owner of valuable property, has a right to use it or the income from it in the support of the family, and may properly employ her husband as her agent to manage her business without subjecting her property to the payment of his debts.

2. ASSUMPSIT—*When Action for Money Had and Received Will Lie.*—An action for money had and received may be maintained whenever the defendant has obtained money of the plaintiff, either directly or through an agent, which in equity and good conscience he ought not to retain. When money has been thus received, the law implies a promise to pay, notwithstanding there was no privity between the parties.

3. INSTRUCTIONS—*Stating Abstract Propositions—Objections Cured.*—While appellee's first instruction announces an abstract proposition of law, it proceeds without any break in the sentence to apply the law to the facts as claimed by appellee, and thus the defect, if any existed, is cured.

Assumpsit, for money had and received. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed September 13, 1897.

PALMER, SHUTT, HAMILL and LESTER, attorneys for appellant.

CONNOLLY, MATHER and SNIGG, attorneys for appellee.  •

MR. JUSTICE GLENN DELIVERED THE OPINION OF THE COURT.

This is an action of assumpsit brought by appellee to recover of appellant the sum of $862.28, for which sum judgment was rendered for the former.

In 1892 the appellee borrowed of the Illinois National Bank located at Springfield, Illinois, the sum of $1,500. At that time her husband, J. N. Gatton, was insolvent. She owned real estate in the vicinity of Springfield, Illinois, of considerable value. The credit was given to her, and she alone signed the note; subsequently, when the note was from time to time renewed, her husband joined with her in the execution of the note. The money thus borrowed was placed in the Illinois National Bank to her credit. This money was to be used in the stock business by her husband, in her name, as her agent, to help support the family, for the benefit of keeping up family expenses. The checks were all signed by her individually, or in her name by her husband as her agent. The husband of appellee reported to her the purchases and sales and what amount of money was realized, and the losses. The losses from the time she commenced business up to the time this controversy commenced, were from $300 to $400. She drew on the funds in the bank for the family expenses, and the husband also drew on this account in her name for some of his personal expenses and some wearing apparel, with her knowledge and consent.

The proceeds of sales of stock were always sent to Illinois National Bank, and placed to the credit of appellee, and she kept the pass book that showed her account with the bank. On the 28th of January, 1896, J. N. Gatton shipped from Granite City to Springfield a carload of cattle to his wife, the appellee. Some of these cattle, as the agent of appellee, he sold in Springfield, the balance he shipped to Chicago. From the contract for the shipment of this stock it appears that it was to be shipped "from Granite City to Chicago; shipper Geo. E. Gatton; consignee, Stockmen's

Live Stock Company. The contract was made out in the name of appellee. The agent of the railroad company at Springfield, for the purpose of getting a through rate, marked the appellee's name out as consignee, and left the name of J. N. Gatton as consignor. This was done by him without authority from appellee. The cattle were shipped to Chicago in the name of J. N. Gatton. They were sold by the Stockmen's Live Stock Company, and the proceeds sent by draft to appellant, without any authority, to be placed to the credit of J. N. Gatton. The appellant applied this money in part liquidation of a debt held by it against J. N. Gatton and one Knox. As soon as it was discovered what had been done, appellee made a demand for the money of appellant, and payment was refused.

That the money procured by appellee of the Illinois National Bank to engage in the stock business was her separate property, is clear. It was obtained upon her individual note. She owned valuable real estate and was solvent. She had a right as to her separate property to use the income from it in the support of the family; she had the right, and it was proper, for her to employ her husband as her agent to manage the business, and especially so as the business necessarily involved the employment of some one for that purpose. Bennett et al. v. Stout et al., 98 Ill. 47; Bongard v. Core, 82 Ill. 19.

It is suggested by appellant's counsel that this was an arrangement between appellee and her husband to hinder and delay his creditors. We do not think the evidence sustains this contention. All purchases were made by him, and also all sales, upon consultation, with appellee. The proceeds were deposited to her credit, and drawn out by checks signed in her name, and the business was all kept within her control.

The record in this case fails to disclose any evidence that shows that this arrangement between appellee and her husband to engage in the buying and selling of stock was tainted with fraud, or that there was any gift by the appellee to her husband. The evidence shows the fact to be that there

were no profits in the business; that the losses were between $300 and $400, so there are no profits included in the money in controversy in this suit. In this case there is no controversy over the profits. It is not like the case of Pease v. Barkowsky, 67 App. 274.

It is apparent from the evidence in this case, that this controversy is with reference to the disposition of the funds derived from the sale of the carload of cattle shipped from Granite City to Chicago by appellee's husband, and that they belonged to her. It is clear that it was not intended these funds should be sent to appellant, and be applied on an indebtedness of J. N. Gatton to the appellant. It makes but little difference who made the mistake, so the person who participted in the mistake and reaped the benefits of it is the one sued. That the appellant knew, when it received the draft for $862.27 from the Stockmen's Live Stock Co., to be placed to the credit of J. N. Gatton, there was a mistake in sending this remittance to it, there can be but little doubt. The appellee had done no business with appellant since she had been engaged in the stock business. Her husband had done no business with it for quite a number of years, no arrangement had been made by any one that these funds should be sent to appellant. These circumstances would necessarily lead the officers of appellant to believe this remittance came to them by mistake. There is no evidence showing that the appellee or her husband authorized or directed the Stockmen's Live Stock Company to send these funds to appellant. The Stockmen's Live Stock Company acted as the agent of appellee in receiving and selling the cattle shipped from Granite City to Chicago, and in making the remittance to appellant it was acting as her agent, and the appellant is liable to her for money sent to it by her agent by mistake.

It is insisted on the part of appellant that this action for money had and received will not lie in this case, because there is no privity between the parties. To sustain this position they rely on the case of Town of Rushville v. President, etc., of Rushville, 39 App. 503, decided by this court. In that

case the collector of the taxes collected by him for road and bridge purposes within the corporate limits of appellee paid one-half to the treasurer of appellee, and the other half to the treasurer of the highway commissioners of appellee. In that case the appellee claiming that all the money thus collected was by the terms of the charter payable into its treasury, brought suit to recover sum realized by appellant. The money in that case was paid by the collector to appellant. In this case the money was paid by the appellee through her agent to appellant. That case is clearly distinguishable from the one at bar.

"It is the well recognized doctrine, that the action for money had and received, may be maintained, wherever defendant has obtained money of the plaintiff, which in equity and good conscience he has no right to retain. * * * When money has been thus received, the law implies a promise to pay notwithstanding there was no privity between the parties." Taylor v. Taylor et al., 20 Ill. 650.

The appellant received the money sued for in the case from appellee and has no right to retain it in equity and good conscience.

Appellant claims that the first instruction given on motion of appellee is an abstract proposition of law, and is liable to mislead and confuse the jury. It is true this instruction in the first part announces a proposition of law, but in the same instruction, and without any break in the sentence, except by a semi-colon, this law is applied to the facts as claimed by appellee, thus curing the defect if any existed.

We hold that the jury was fairly instructed as to the law of this case, both as to appellant and the appellee, and as the jury found the facts with the appellee we are not disposed to disturb the judgment of the court below, and the judgment will affirmed.